IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**JIA LI, an Individual;**

**DAVID HSIAO, an Individual,**

    *Plaintiffs,*

v.

**GBM Foundation Company Ltd
D/B/A BitMart, a Grand Cayman Islands
Corporation;**

    *Defendant.*

Civil Action No.:

## NATURE OF ACTION

Plaintiffs Jia Li and David Hsiao ("Plaintiffs"), and by their attorney, Anthony Scordo, Esq., PC, complains of Defendant GBM Foundation Company d/b/a BitMart, (hereinafter collectively referred to as "BitMart" or "Defendant") for consumer fraud, unfair business practices, violating the requirements as imposed upon them by the State of New Jersey toward investors by taking and holding Plaintiffs' property illegally and failing to return or account for same. Plaintiffs now seek to recover damages and equitable relief.

## THE PARTIES

1. Plaintiff Jia Li is a citizen of the People's Republic of China.

2. Plaintiff David Hsiao is a citizen of the United States of America and a resident in the State of California.

Defendant GBM Foundation Company Ltd is a corporation incorporated in the Grand Cayman Islands with its principal place of business located at 214 River Street, Hoboken, New Jersey 07030.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1322(a)(2) because the Plaintiff is a citizen of the United States of America and a resident in the State of California. The Defendant BitMart is a Limited Liability Company formed in the Grand Cayman Islands and the State of New Jersey with its principal place of business located in the State of New Jersey; thus, the matter in controversy exceeds the sum of $75,000.00, exclusive of costs and interest, and the parties herein are citizens of different States.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant was formed as a limited liability company in the State of New Jersey and has its principal place of business in the State of New Jersey, resides within the District of New Jersey, and substantial part of the events or omission and damages giving rise to this action occurred in this District.

## INTRODUCTION

5. This Complaint arises out of the cryptocurrency exchange's unlawful and unfair business practices directed at ordinary consumers, including these Plaintiffs. Plaintiffs here are two investors from whom BitMart has taken money, illegally, and subsequently ignored requests for information and demands for return of deposits and, upon information and belief, there are other consumers. Defendant BitMart has unlawfully withheld the hard-earned investments of Plaintiffs and other consumers from New Jersey and worldwide.

6. This action challenges BitMart's unlawful and unfair business practices associated with its User Agreement and various representations on its website. It also challenges the

Defendant's conversion and/or theft of the funds and other property of Plaintiffs and seeks all damages resulting therefrom.

## FACTUAL ALLEGATIONS

7. According to their website available to the general public, BitMart is a "premier global digital asset trading platform" with over 510,000 users worldwide and ranked among the top twenty cryptocurrency exchanges. Daily Trading Volume as of one year ago is stated to have ranged from $70 million to $120 million. The website indicates BitMart had one of the lowest trading fees on the market.

8. Digital currencies are currencies available only in digital form, not physical form such as bank notes or coins. Common cryptocurrencies include Bitcoin, Ethereum and Litecoin. All transactions involving a cryptocurrency are tracked on a ledger visible to all users on a "blockchain". A blockchain continually grows to contain secured records of all transactions. Blocks are created when the distributed computers complete the work of cryptographically securing the information. Global actors that do the work of storing and securing the data do so for the chance to obtain cryptocurrency when new chains are formed and are only added to the blockchain when there is consensus. As a general rule, decisions about the blockchain, and any changes in the software are essentially controlled by a group of miners and developers. Because of their digital nature, security is paramount for owners and investors of cryptocurrencies.

9. BitMart's website contains numerous representations regarding its capabilities, security, and customer service, including as follows:

> A. Trust. As of the fundamental of the financial system, and the core to the decentralized token economy. We fully understand all the challenges that the cryptocurrency ecosystem is facing to, hence we are committed into compliance, reliability, security, customer care, and deliver the seamless user experience to build the trust.

B. Accessible. As a global exchange platform, we hope the halo of digital assets can benefit every investor. It is our vision to provide an environment with smooth accessibility and suitable entry barrier for every potential investor, making the digital assets significant.

C. Professional. No matter for entry-level traders or professional investors, BitMart provides several finely tailored services, including listing numerous top-grade digital assets for our clients to invest and success, providing an industrial developer platform for advanced traders, and customizing the best-fit assets management solution for institutions of all sizes.

10. Plaintiffs Hsiao and Li each registered accounts with BitMart in July of 2020. Prior to opening their accounts, Plaintiffs had researched a number of potential cryptocurrency exchanges. Plaintiffs' respective decisions to do business with BitMart was based on BitMart's representations on its websites as well as fees.

11. Registration with BitMart does not require customers to acknowledge having reviewed BitMart's User Agreement contained in its website and Plaintiffs of course never reviewed same. Rather, once Plaintiffs provided identifying information they were permitted to begin purchasing currency or trading, without clicking, agreeing, or opting in or out of the User Agreement.

12. BitMart allows members to deposit and withdraw cryptocurrencies for the purpose of purchasing and/or selling coins on its exchange with other users. Users can convert those coins at current market exchange rates into a more recognized or stable cryptocurrency backed by verifiable assets.

13. BitMart receives revenues in the form of transaction fees for every trade made on its exchange platform and 15 USDT for every withdrawal made from the exchange.

14. Plaintiffs deposited a stable cryptocurrency named USD Tether (USDT) for the purpose of trading on the Defendant's exchange BitMart. Plaintiff Li deposited 157,862.27 USDT coins

over a one-month period starting on August 1, 2020. Plaintiff Hsiao deposited approximately 200,000 USDT coins over a two-month period starting in July 2020.

15. After depositing, Plaintiffs purchased coins called TWEE listed on the exchange with their USDT, which is one of those recognized in the industry as stable and backed by verifiable assets and is pegged to the US dollar such that the number of USDT coins is valued at the same number of US Dollars.

16. Plaintiff Li made multiple TWEE purchases over the course of one month starting on August 1, 2020, when she purchased 1,663 TWEE coins using approximately 14,518 USDT. Her second purchase on August 9, 2020 for 2,081 TWEE coins using approximately 28,011 USDT. In total over the course of August 2020, Plaintiff Li made multiple purchases investing 157,862 USDT into TWEE purchasing a total of 7,687 TWEE coins priced between 6 USDT per TWEE coin to 39 USDT per TWEE coin. In total Plaintiff Li deposited and invested 157,862.27 USDT.

17. Plaintiff Hsiao made over 30 TWEE transactions over the course of two months starting on July 18, 2020, when he purchased 14,973 TWEE coins using approximately 38,000 USDT. On July 28, 2020 he purchased 2,665 TWEE coins using approximately 12,000 USDT. Over the month of August 2020 he purchased over 10,000 TWEE coins using approximately 130,000 USDT. Plaintiff Hsiao made multiple purchases investing approximately 157,862 USDT into TWEE purchasing TWEE priced at 2.52 USDT per TWEE coin to 40 USDT per TWEE coin. In total Plaintiff Hsiao deposited and approximately 200,000 USDT.

18. In the period from July 18, 2020 to September 4, 2020, the value of each TWEE coin grew from approximately 2 USDT per coin to 83.5 USDT per coin.

19. On September 4, 2020, in a series of trades Plaintiff Li sold 7,687 TWEE coins valued at approximately 83.5 USDT per coin. She converted her TWEE to approximately 642,676.48 USDT, valued at $642,676.48 USD.

20. On the morning and afternoon of September 4, 2020, Plaintiff Hsiao sold approximately 12,000 TWEE coins valued at approximately 82.5 USDT per coin. He converted 12,000 TWEE to approximately 1,000,000 USDT, valued at $1,000,000 USD. In the evening, Plaintiff Hsiao sold approximately 12,000 TWEE coins valued at approximately 83.4 per TWEE coin. He converted this 12,000 TWEE to 1,011,000.47 USDT, valued at $1,011,000.47 USD.

21. On September 4, 2020, Plaintiff Li attempted to withdraw her account's 642,676.48 USDT from the Defendant's exchange. The withdrawal was not successful. BitMart had notified users that due to volatility in TWEE trading, they had frozen all withdrawals related to TWEE trading.

22. On September 4, 2020, Plaintiff Hsiao withdrew approximately 1,000,000 USDT in the afternoon successfully. On September 5, 2020 Plaintiff Hsiao attempted to withdraw his remaining 1,011,000.47 USDT from the Defendant's exchange. The withdrawal was not successful. BitMart had notified users that due to volatility in TWEE trading, they had frozen all withdrawals related to TWEE trading.

23. After September 4, 2020, hundreds of BitMart's registered users including Plaintiffs submitted complaints to Defendants stating their funds were withheld on the exchange. Upon information and belief, over 7,000,000 USDT was withheld on the exchange shortly after September 4, 2020.

24. On September 10, 2020 Defendants allowed withdrawal of Plaintiff Li's initial deposit and investment of 157,862.27 USDT from the exchange after withholding all funds for six days. Plaintiff Li's remaining 484,814.21 USDT has been withheld with BitMart since.

25. In the weeks following September 4, 2020, Plaintiffs Li and Hsiao have continuously contacted Defendants BitMart through their officers, agents and employees Erte Xia 夏尔, and Qing Yang 杨箐 to demand withdrawal and return of their funds with no success.

26. Defendants instructed Plaintiffs Li and Hsiao to contact associates of the TWEE coin company in attempts to discuss withdrawals of their funds withheld with BitMart.

27. After communications with TWEE coin company associates, Plaintiffs subsequently found that their personal information stored on BitMart's databases had been exposed, including contact information, identification information, and transaction records, in direct violation of BitMart's Privacy Policy, which states:

> BitMart does not sell, trade, transfer Personal Information to external parties, or allow external parties to do so on BitMart website. However, to the extent necessary for 1) proper functioning of BitMart website and improvement of BitMart services 2) compliance with any of the applicable laws, regulations, rules or any order of courts or other competent authorities or 3) due protection of the rights, property, or safety of us or other persons, the following parties shall be excluded from such promise: our affiliates and trusted third party vendors we engage to help us operating our website, managing our business, or providing services directly and indirectly to the Users, provided that such parties understand and agree to keep such Personal Information confidential. Nevertheless, your Personal Information will not be provided to external parties for marketing, advertising or other purposes, unless an authorization is directly obtained from you.

28. On September 15, 2020, Plaintiffs Li and Hsiao received threats from associates of TWEE company in attempts to force Plaintiffs to send funds to TWEE. TWEE associates threatened Plaintiffs with legal action and doxxing of personal information to the public if funds were not sent to TWEE associates. Upon information and belief, those threats were the result of

communications from defendant Bitmark's officers, employees and, or representatives as a means of attempting to scare plaintiffs' from asserting their legal rights in American courts against Bitmark.

29. Plaintiffs have properly demanded access to full account transaction records which BitMart claims on its website are available upon request by e-mailing customer support. They have been refused access to full transaction records.

30. At present time, Defendants have withheld Plaintiff Li's funds without explanation totaling 484,814.21 USDT remaining on the exchange.

31. At present time, Defendants have withheld Plaintiff Hsiao's funds without explanation totaling 1,011,381.47 USDT remaining on the exchange.

## CAUSE OF ACTION
### (Violation of New Jersey's Consumer Fraud Act N.J.S.A. 56:8-1 et. seq.)

32. Plaintiffs hereby incorporate by this reference paragraphs 1 through 29 above as if set forth fully herein.

33. The acts and practices described in this Complaint were intended to result in the sale of services, specifically the processing of trades in cryptocurrencies, in a consumer transaction.

34. The Defendant's business practices violated, and continue to violate, New Jersey Consumer Fraud Act NJSA 56:8-1 et seq in at least the following respects:

    a. Defendant represented that customer services provided were of a particular standard, quality, or grade when they were not, thus constituting an unconscionable commercial practice pursuant to NJSA 56:8-2; and

    b. Defendant violated NJSA 56:8-2 by inserting unconscionable provisions in the User Agreement which was nonnegotiable and never consented to.

    c. Defendants have suffered an ascertainable loss as a result of Defendant's illegal business practices.

**WHEREFORE** Plaintiff seeks actual damages trebled plus costs of suit and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Violation of New Jersey's Unfair Competition Law NJSA 17:29B-1 et. seq )

35. Plaintiffs hereby incorporates by this reference paragraphs 1 through 31 above as if set forth fully herein.

36. Defendant has violated New Jersey Unfair Competition Law by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated from the State of New Jersey, unfair, deceptive, untrue, or misleading advertising and by violating NJSA 17:29B-1 et seq. , et seq., as set forth above in this Complaint.

37. Defendant's practices are likely to deceive, and have deceived, members of the public.

38. Defendant knew, or should have known, that their misrepresentations, omissions, failure to disclose and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

39. Defendant continues to make such misrepresentations despite the facts that they knew or should have known that their conduct was misleading and/or deceptive.

40. By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of New Jersey's Unfair Competition Law, NJSA 17: 29B-1 et. seq.

41. Plaintiffs suffered injury in fact as a result of Defendant's unfair methods of competition. As a proximate result of Defendant's conduct, Plaintiffs were exposed to these

misrepresentations, omissions, and unlawful conduct, and used defendants' services in reliance on these misrepresentations, and suffered monetary loss as a result.

**WHEREFORE** Plaintiffs seek an order of this Court against Defendant awarding compensatory damages, restitution, injunctive relief, and all other relief allowed under NJSA 17:29B-1, et seq., plus interest, attorneys fees and costs.

### THIRD CAUSE OF ACTION
### (Conversion)

42. Plaintiffs hereby incorporate by this reference paragraphs 1 through 39 above as if set forth fully herein.

43. At all times herein mentioned Plaintiffs were, and still are, the owners and were, and still are, entitled to the possession of certain funds and property that were withheld by the Defendant for their own use.

44. As a direct and proximate cause of the Defendant's conversion of the Plaintiffs' property, Plaintiffs have suffered damages, the full nature and extent of which are presently unknown, but which will be determined according to proof at trial.

45. Defendants acts alleged herein were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

**WHEREFORE** Plaintiffs seek judgment for compensatory and exemplary damages as well as attorneys' fees and costs of suit.

### FOURTH CAUSE OF ACTION
### (Fraudulent Deceit)

46. Plaintiffs hereby incorporate by this reference paragraphs 1 through 42 above as if set forth fully herein.

47. Defendant willfully and intentionally engaged in fraud and deceit.

48. Defendant induced Plaintiffs into entrusting funds to them by promising that they would facilitate the purchase of cryptocurrencies and transfer funds from Plaintiffs to the cryptocurrency companies for such purchases.

49. Defendant's fraudulent promises to purchase cryptocurrencies as directed by Plaintiffs occurred on the dates and in the manner discussed herein.

50. Defendant's assertion and promises, which induced Plaintiffs into entrusting cryptocurrencies to Defendant, were not true facts and Defendant did not believe its assertions and promises to be true.

51. Defendant made promises to Plaintiffs to facilitate the purchase of cryptocurrencies which he had no intention of performing. To the contrary, Defendant intended to keep Plaintiffs' funds for their own personal use.

52. All of BitMart's promises, communications and act with Plaintiffs in regards to attempted purchase of cryptocurrencies identified herein were knowingly false and made with the intent to deceive Plaintiffs in order to unlawfully misappropriate Plaintiffs funds for BitMart's own personal use.

53. All of BitMart's promises, communications and acts with Plaintiffs in regards to over-quoting for the purchased cryptocurrencies identified herein were knowingly false and made with the intent that Plaintiffs rely on defendants false representations in order to deceive Plaintiffs so that Defendant could unlawfully misappropriate Plaintiffs funds for their own use.

54. Based on its status as a leading cryptocurrency company and BitMart's professional experience, Plaintiffs justifiably relied on the promises, assertions and representations made by BitMart in inducing Plaintiffs to transfer funds for the purchase of cryptocurrencies.

55. BitMart did not perform its promises to purchase the cryptocurrencies.

56. Plaintiffs have been damaged in an amount to be proved at trial as a result of BitMart's fraudulent and deceitful actions in misappropriating the cryptocurrency funds.

57. In addition, Plaintiffs' damages as a result of BitMart's fraudulent and deceitful acts are ongoing and increasing due to Plaintiffs contractual obligations to provide benefit payments for the claims identified here.

**WHEREFORE** Plaintiffs seek judgment for compensatory and exemplary damages as well as attorneys' fees and costs of suit.

### FIFTH CAUSE OF ACTION
**(Breach of Contract)**

58. Plaintiffs hereby incorporate by this reference paragraphs 1 through 54 above as if set forth fully herein.

59. Plaintiffs and defendants entered into an implied or expressed contract whereby BitMart was required to provide quotes for cryptocurrencies, receive funds and transfer funds to the appropriate company for purchase of cryptocurrencies.

60. Even if, arguendo, the BitMart User Agreement is enforceable, which it is not, that terms set forth therein are unconscionable. The User Agreement provides that it is governed by Grand Cayman's law, i.e. the law of a foreign country. The terms of the User Agreement are provided to consumers on a take it or leave it basis. The User Agreement is hidden on BitMart's website and consumers are not required to read the agreement let alone engage in any affirmative act to "consent" to its terms. Consumers are not given a copy of the User Agreement and must go to BitMart's website in order to review its terms.

61. In addition, Plaintiffs and Defendant entered into an implied or express contract where BitMart was to provide certain cryptocurrencies at the price quoted and for the amount of

funds transferred by Plaintiffs to BitMart. An implied or express condition of the contract obligated BitMart to return and funds to Plaintiffs which were in excess of the actual purchase price of the cryptocurrency.

62. BitMart has breached the contract by failing to provide the cryptocurrencies as directed and misappropriating Plaintiffs' funds for their own personal use. Specifically, BitMart breached their contractual obligations in the manner described herein.

63. BitMart is vicariously liable to Plaintiffs for the harm caused to Plaintiffs as the result of BitMart's breach of contract and misappropriation of Plaintiffs' funds.

64. Plaintiffs have been damaged in an amount to be proven at trial as a result of BitMart's breach of contract and misappropriations of the cryptocurrency funds.

65. In addition, Plaintiffs' damages are ongoing and increasing due to BitMart's contractual obligations to provide benefit payments for the claims identified herein.

**WHEREFORE**, Plaintiffs seek compensatory and consequential damages, fees and costs of suit.

### SIXTH CAUSE OF ACTION
### (Fraud/Intentional Misrepresentation)

66. Plaintiffs hereby incorporate by this reference paragraphs 1 through 62 above as if set forth fully herein.

67. BitMart willfully and intentionally engaged in fraud and misrepresentation.

68. BitMart induced Plaintiffs into entering into a contract by representing that they would facilitate the transactions of cryptocurrencies and transfer funds from BitMart back to the Plaintiffs.

69. BitMart's fraudulent representation to facilitate the transactions of cryptocurrencies occurred on the dates and in the manner discussed herein.

70. BitMart's assertions and representations of facts were not true, BitMart did not believe its assertions and representations to be true, and BitMart made such representations recklessly and without regard for the truth.

71. BitMart made promises to Plaintiffs to facilitate the purchase of cryptocurrencies and transfer funds to plaintiffs requests for withdrawal which the Defendant had no intention of performing. To the contrary, BitMart intended to keep Plaintiffs' funds for their own personal use.

72. All of BitMart's acts, representations and communications with Plaintiffs in regards to the attempted trading of cryptocurrencies identified herein were knowingly false and made with the intent that Plaintiffs rely on their false representations in order to deceive Plaintiffs so that BitMart could unlawfully misappropriate Plaintiffs' funds for their own personal use.

73. All of BitMart's acts, representations and communications with Plaintiffs in regards to the attempted purchase of cryptocurrencies identified herein and in Exhibit "B" were knowingly false and made with the intent that Plaintiffs rely on their false representations in order to deceive Plaintiffs so that BitMart could unlawfully misappropriate Plaintiffs funds for their own personal use.

74. Plaintiffs have been damaged in an amount to be proven at trial as a result of BitMart's fraudulent and deceitful actions in misappropriating of the cryptocurrency funds.

75. In addition, Plaintiffs' damages as a result of BitMart's fraudulent and deceitful acts are ongoing and increasing due to BitMart's contractual obligations to provide benefit payments for the claims identified herein.

**SEVENTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

76. Plaintiffs hereby incorporate by this reference paragraphs 1 through 72 above as if set forth fully herein.

77. As a result of BitMart's obligations to receive Plaintiffs' funds and facilitate transactions of cryptocurrencies, a fiduciary relationship existed between the parties whereby BitMart had a fiduciary duty to Plaintiffs and was duty bound to act with the utmost good faith for the benefits of Plaintiffs.

78. BitMart breached their fiduciary duty to Plaintiffs by withholding and misappropriating Plaintiffs' funds for their own personal use and enjoyment.

79. Plaintiffs have been damaged in an amount to be proven at trial as a result of BitMart's breach of fiduciary duty to Plaintiffs.

80. In addition, Plaintiffs' damages are ongoing and increasing due to BitMart's contractual obligations to provide benefit payments for the claims identified herein.

**WHEREFORE,** Plaintiffs seeks judgment for compensatory and punitive damages and costs of suit.

Dated: October 12, 2020

Anthony Scordo
Attorney for Plaintiffs

## VERIFICATION OF COMPLAINT

Davis Hsiao and Jia Li, of full age, say:

1. We are the Plaintiffs in the foregoing Verified Complaint.
2. The allegations therein are true to our personal knowledge.
3. I certify the above mentioned statements are true. I realize if the above statements are willfully false, I am subject to punishment.

_____
David Hsiao

Dated: October 12, 2020

_____
Jia Li

Dated: October 12, 2020