<u>Not for Publication</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JIA LI, DAVID HSIAO, <br><br> *Plaintiffs*, <br><br> v. <br><br> GBM FOUNDATION COMPANY D/B/A BITMART, <br><br> *Defendant*. | Civil Action No. 20-cv-14377 <br> (JMV) (MF) <br><br> <u>OPINION</u> |

**John Michael Vazquez, U.S.D.J.**

Presently before the Court is Plaintiffs' motion for a temporary restraining order, D.E. 6, which Defendant has not opposed.  Plaintiffs allege that Defendant is unlawfully holding their cryptocurrency and threatening to release their confidential, personal information to third parties. Plaintiffs seek to enjoin Defendant from sharing their personal information with any third party, and to stop Defendants from holding their cryptocurrency and freezing their accounts.  The Court reviewed Plaintiffs' submissions in support[1] of their motion and decided the motion without oral argument.  For the reasons discussed below, Plaintiffs' motion for a temporary restraining order is **DENIED**.

---

[1] Plaintiff's' brief in support of their motion is referred to as "Ps' Br.," D.E. 6-1, and Plaintiffs' Complaint is "Compl.," D.E. 1.

I.       FACTUAL & PROCEDURAL BACKGROUND

Defendant GBM Foundation Company Limited, d/b/a BitMart ("BitMart"), is a Cayman

Islands corporation with its principal place of business is in Hoboken, New Jersey.  Compl. ¶ 2.

BitMart is a cryptocurrency[2] exchange with over 510,000 users worldwide.  *Id.* ¶ 7.  Plaintiff Li is

a citizen of China who opened a BitMart account in July 2020.  *Id.* ¶¶ 1, 10.  Plaintiff Hsiao is a

citizen of California who opened a BitMart account in July 2020.  *Id.* ¶¶ 2, 10.

On the BitMart exchange, users can "deposit and withdraw cryptocurrencies for the

purpose of purchasing and/or selling coins on its exchange with other users" and the coins can be

converted at current market exchange rates "to more recognized or stable cryptocurrency backed

by verifiable assets."  *Id.* ¶ 12.  Plaintiffs allege that they "deposited a stable cryptocurrency named

USD Tether (USDT)" to be able to trade on BitMart.  *Id.* ¶ 14.  Li deposited 157,862.57 USDT

coins during the month of August 2020, and Hsiao deposited about 200,000 USDT coins during

July and August 2020.  *Id.* ¶¶ 16-17.  After making these deposits, Plaintiffs purchased coins called

TWEE[3] using their USDT.  *Id.* ¶ 15.  On September 4, 2020, Plaintiffs each engaged in transactions

to sell their TWEE and converted their TWEE into USDT.  *Id.* ¶¶ 19-20.  Li's TWEE was valued

at $642,676.48 and Hsiao's at $1,011,000.47.  *Id.*  That same day, Li attempted to withdraw the

USDT in her account, however, BitMart "notified users that due to volatility in TWEE trading,

they had frozen all withdrawals related to TWEE trading."  *Id.* ¶ 21.  Hsiao also attempted

withdrawals around that time – he successfully withdrew about 1,000,000 USDT on September 4,

2020, but when he attempted to withdraw his remaining USDT the next day, he was unsuccessful

---

[2] Cryptocurrency is "a type of asset available only in digital form, not physical form such as bank
notes or coins."  Ps' Br. at 1, ¶ 2.

[3] Plaintiffs' motion for a temporary restraining order indicates that TWEE were created by a
company called Tweebaa.  Ps' Br. 2 ¶ 7.

and received notification that BitMart had frozen all withdrawals related to TWEE trading.  *Id.* ¶ 22.

On September 10, 2020, Defendant permitted Li to withdraw her initial deposit and investment of 157,862.27 USDT from the exchange; however, her remaining 484,814.21 USDT has since been withheld by BitMart.  *Id.* ¶ 24.  Since September 4, Plaintiffs have "continuously contacted" Defendant "to demand withdrawal and return of their funds with no success."  *Id.* ¶ 25.

Defendant instructed Plaintiffs "to contact associates of the TWEE coin company in attempts to discuss withdrawals of their funds withheld with BitMart," and following communications, Plaintiffs learned that their personal information stored on BitMart databases – which included contact information, identification information, and transaction records – had been exposed, in violation of BitMart's Privacy Policy.  *Id.* ¶¶ 26-27.  Plaintiffs allege that on September 15, 2020, they "received threats from associates of TWEE company in attempts to force [them] to send funds to TWEE."  *Id.* ¶ 28.  Specifically, Plaintiffs assert that TWEE associates threatened to initiate legal action and to release Plaintiffs' personal information to the public if Plaintiffs failed to send funds to the TWEE associates.  *Id.* ¶ 28.  Plaintiffs allege that those threats were based on communications from BitMart's employees and officers in an attempt to scare Plaintiffs from asserting their legal rights against BitMart in court.  *Id.*

Plaintiffs filed a Complaint on October 13, 2020.  D.E. 1.  The Complaint includes seven counts: (1) a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; (2) a violation of New Jersey's Unfair Competition Law, N.J. Stat. Ann  § 17:29B-1 *et seq.*; (3) conversion; (4) fraudulent deceit; (5) breach of contract; (6) fraud/intentional misrepresentation; and (7) breach of fiduciary duty.  Compl. ¶¶ 32-80.

On November 4, 2020, Plaintiffs filed the present motion for a temporary restraining order, which seeks to prevent Defendant from disclosing Plaintiffs' personal information to third parties and to stop Defendants from injuring Plaintiffs by disabling and freezing Plaintiffs' BitMart accounts.  D.E. 6.  The Court held a teleconference with Plaintiffs' counsel on November 5, 2020 – at that time, Defendant had not yet been served despite Plaintiffs' attempts.  Plaintiffs served Defendant on November 10, 2020.  D.E. 9-1.  The Court conducted a teleconference with counsel for Plaintiffs and Defendant[4] on November 16, 2020 to discuss a briefing schedule.  Although the Court issued an Order setting a briefing schedule, D.E. 12, no additional submissions were received.  The Court also set a date for a telephonic oral argument, D.E. 12, however, no counsel or parties appeared.  On December 3, 2020, Defendant filed an answer through counsel but no opposition to the present motion was filed.  As a result, the Court relies solely on Plaintiffs' Complaint and moving papers to render its decision.

## II.      LEGAL STANDARD AND ANALYSIS

Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1.  Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).  Such relief may only be granted when a party demonstrates that she has a reasonable probability of success on the merits, she will suffer immediate and irreparable harm if the injunction does not issue, the grant of preliminary relief will not result in greater harm to the nonmoving party, and the injunctive relief is in the public interest.

---

[4] Counsel who participated in the November 16, 2020 conference call on behalf of Defendant later notified the Court that she was not admitted to the New Jersey bar and could not formally appear in this case.  To date, no other counsel has entered an appearance on behalf of Defendant.

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citing *Crissman v. Dower Down Entm't Inc.*, 239 F. 3d 357, 364 (3d Cir. 2001)); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).

As to the first factor, Plaintiffs argue that "at the very least" they "can demonstrate a reasonable probability of success" on their conversion claim. Ps' Br. 7. Plaintiffs contend that whether cryptocurrency can be the subject of a conversion is a matter of first impression under New Jersey law, but courts in Florida and Georgia have allowed it. *Id.* at 8. Plaintiffs further assert that, although the arbitration clause in the user agreements they each signed mandates that all disputes be governed by Cayman Islands law, the agreement "is unenforceable and unconscionable" because it "seeks to apply the law of a foreign nation to a business dispute arising out of New Jersey," it is an adhesion contract, and its "terms were never assented to by Plaintiff[s] and there was no meeting of the minds." *Id.* at 12.

The user agreement to which Plaintiffs refer was attached to the motion for a temporary restraining order. D.E. 6-3. The agreement provides a formal complaint process that users agree to utilize "before filing any arbitration claim or small claims action." D.E. 6-3 at ¶ 9.2. If the formal complaint process does not resolve a dispute, the matter "shall be resolved through binding arbitration, on an individual basis." *Id.* at ¶ 9.3. The agreement also contains a provision detailing that "the laws of Cayman Islands, without regard to principles of conflict of laws, will govern this Agreement and any claim or dispute that has arisen or may arise between you and BitMart." *Id.* ¶ 10.9.

A court sitting in diversity must resolve choice of law questions by applying the choice of law analysis adopted by the forum state – here, New Jersey. *Pollock v. Barrickman*, 610 F. Supp. 878, 879 (D.N.J. 1985) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)).

Instead of applying New Jersey's choice of law analysis to determine the applicable law, Plaintiffs applied New Jersey's substantive law on conversion (and also included decisions from Florida and Georgia, neither of which applied New Jersey law).  As a result, Plaintiffs have not demonstrated a reasonable likelihood of success on the merits because Plaintiffs have not shown that they have analyzed the correct law.

Another flaw in Plaintiffs' first-step analysis is their conclusory assertion that the agreement's choice of law provision that mandates the application of Cayman Islands law is "unenforceable and unconscionable."  Plaintiffs fail to cite any legal authority, much less conduct a legal analysis, to support their unconscionability argument.  Plaintiffs similarly fail to analyze why the user agreement's arbitration provision is unenforceable.  Plaintiffs have not shown their likelihood of success on the merits.

As to irreparable harm, Plaintiffs contend that they "may and most likely will experience irreparable injury in the absence of an injunction," asserting that TWEE and Defendant are "apparently in cahoots" and that "Defendant has apparently been conferring with TWEE and has in its possession much of both Plaintiffs'" confidential information.  Ps' Br. 9.  Plaintiffs suggest that if their information is released, other TWEE investors around the world who lost money "*could conceivably* contact and harass or even assault" them.  *Id.* (emphasis added).

Plaintiffs have failed to show imminent irreparable harm.  First, their arguments concerning irreparable harm are not tied to their conversion claim, which is the claim that they analyzed as to their likelihood of success on the merits.  Second, Plaintiffs admit that it is only "conceivable" that TWEE might share their information.  Yet, while many future events are conceivable, Plaintiffs must show more to meet their burden as to immediate, irreparable harm.  "To be imminent, the injury cannot be remote or speculative; it must be poised to occur before the District Court can

hold a trial on the merits." *Par Pharm., Inc. v. Quva Pharma, Inc.*, 764 Fed. App'x. 273 (3d Cir. 2019).  Finally, to the extent that Defendant already conveyed this information to TWEE, an injunction would be too late to stop the complained of action.

Because Plaintiffs have not satisfied the first and second factors for a temporary restraining order, the Court need not reach the third and fourth factors.  *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, (3d Cir. 2020) ("Generally, the moving party must establish the first two factors and only if these 'gateway factors' are established does the district court consider the remaining two factors.").

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' request for emergent relief is **DENIED** without prejudice.  An appropriate order accompanies this Opinion.


Dated: December 4, 2020

_____
John Michael Vazquez, U.S.D.J.